Welch v. Anderson.

——⬦⬥⬦——

WELCH *et al.*, Plaintiffs in Error, v. ANDERSON, Defendant in Error.

1. To entitle a widow to dower under the third section of the dower act of 1845 (R. C. 1845, p. 430), it was necessary that she should make her election so to take in the mode prescribed by the seventh section of said act; otherwise she would be entitled to dower under the first section.
2. The right of the widow in such case to elect is strictly personal ; it is not transmissible by descent.
3. The widow and the heirs may, by agreement and without a formal election by the widow, determine the kind and quantity of estate she shall take as dower.
4. Suits for partition may be maintained in behalf of those having equitable titles only.

*Error to Lincoln Circuit Court.*

Demurrer to a petition for partition.   The petition was an amended and supplemental one filed October 20th, 1857, in a suit for partition originally instituted, August 21, 1854, by Susannah Anderson, widow of Ransom T. Anderson, deceased, against the heirs of said R. T. Anderson.   Susannah Anderson having died, her heirs filed an amended and supplemental petition.   This petition is in substance as follows : " Plaintiffs state that to the October term, 1854, of the Lincoln circuit court Susannah Anderson filed her petition against said defendants, which petition is as follows—' plaintiff states that in the year 1852, Ransom T. Anderson departed this life intestate and without issue of his body, leaving the following named persons his only heirs, to-wit, Susan-

---

* A motion for a rehearing was filed in behalf of the plaintiffs in error in this case ; it was overruled.

nah Anderson his lawful widow, Jeremiah Anderson his
father, and James Anderson, Harrison Anderson, Sarah
Cochran, Julia Williams and Mary Anderson, his brothers
and sisters in equal degree; that he died seized in fee simple
of the following described real estate, situated in the county
aforesaid, to-wit: [describing it] containing in the aggregate
four hundred and 'eighty-five acres; that plaintiff as widow
aforesaid is entitled to one equal half of said land, and each
of said defendant heirs to one equal sixth part of the other
one-half thereof; that the debts against the estate of said
Ransom T. Anderson are paid, and no reason exists why
partition of said lands should not be made according to the
rights of the parties. Plaintiff therefore asks that each of
said defendants be duly notified of this suit and that the
court will adjudge partition of said lands among said par-
ties according to their respective rights, and appoint com-
missioners to make said partition.'

" Plaintiffs further state in this their amended supple-
mental petition that on the petition aforesaid a summons for
the said defendants, Jeremiah Anderson, James Anderson,
Harrison Anderson and James Williams and Julia Williams
his wife, issued, directed to the sheriff of the county afore-
said, which summons was duly served on each of them; that
another summons issued for the defendants Sarah Cochran
and Mary Anderson, directed to the sheriff of St. Charles
county, in which said two defendants then lived; but said
sheriff of St. Charles failing to return said summons in due
time as commanded, the defendant James Anderson, in order
to prevent delay of the suit, went to St. Charles and ob-
tained from said two defendants a waiver of notice, and the
same was filed in open court, as the records of the case will
show; that it appearing to the court, on the filing of said
waiver, that each of said defendants in the cause had notice
of the suit, and all failing to appear and defend the same,
the court rendered judgment of partition of said lands by
default, and appointed commissioners such partition to
make;" that the said partition was made on the 7th of May,

1855 ; that after said partition was made, but before report thereof to the court, the said Susannah Anderson died, leaving plaintiffs her only sons, who were duly made parties to the suit; that on the filing of the report, defendants moved the court to set aside it and the judgment of partition for several causes—one of which was the want of legal notice ; that the court overruled the motion and confirmed the report; that the defendants appealed to the supreme court, which reversed the judgment and remanded the cause ; [see Anderson v. Anderson, 23 Mo. 379 ;] that after the death of said Ransom T. Anderson, to-wit, October 16, 1852, the said Susannah Anderson, his widow, took out letters of administration on his estate and was about to proceed with said administration as by law directed ; that said defendants suggested to her that said administration would cause delay in the partition and distribution of said estate, would be very expensive and wholly unnecessary, as all the parties in interest were of full age and could by agreement pay the debts of said estate and determine the respective rights of each by agreement ; " that said parties then agreed that said administration should be abandoned and not carried into the court last aforesaid for confirmation or rejection ; that said widow should pay one-half the debts of the estate, including one-half the expense of settling and making distribution and partition thereof, and have one equal half of the estate, both real and personal, as by law in such case provided ; that said parties then employed Charles Wheeler, Esq., to reduce said contract to writing, and on the 15th day of November, 1852, he wrote the articles of agreement which said parties executed on said day, and a copy of which is herewith filed, the original being filed at the office of the clerk of the court last aforesaid, with the other papers of said estate. Plaintiffs know that said Susannah Anderson believed at the time she executed said contract that it embraced the entire estate, both real and personal, and they have no doubt that said defendants also believed it. Plaintiffs further state that the omission to include said real estate or the said Susannah's

interest therein, was, as they believe and charge the fact to be, an innocent omission and contrary to the intention of both parties aforesaid; that said Susannah Anderson paid one-half of the debts of the estate, including expense of settle-ment, and performed every part of her said agreement in good faith; that she by consent of defendants brought her said action of partition, alleging therein that she was enti-tled to one equal half of said real estate; that Jeremiah, James and Harrison Anderson, and James Williams and wife were duly summoned as defendants in the cause and had delivered to them a true copy of the petition, in which she distinctly claimed the interest aforesaid, yet they suffered judgment of partition to be rendered against them by default and partition to be made according to the petitioner's prayer; that the administration of said estate being abandoned by the agreement aforesaid, it was not carried into court, and con-sequently the said Susannah was thereby deprived of the benefit of the notice to make her election of the interest which she would take in said estate, which it would have been the duty of the court to give her had the administra-tion been within its jurisdiction; that defendants, well know-ing that said estate owed but a small amount of debt and that it would be greatly to said widow's interest to take one equal half thereof subject to said debts, readily assented to and agreed to her said rights without further proceedings in said county court; that defendants, at all times from the date of the said agreement and the discontinuance of said administration, admitted and recognized her right to one equal half part of said real estate, and therefore she filed no declaration of her election; that said Susannah had a vested right to one-half of said real estate; that this right vested in plaintiffs as her heirs. Plaintiffs therefore pray the court to adjudge to them such equal half; to appoint commission-ers to set the same apart to them, and grant such other relief," &c.

To this petition the court sustained a demurrer.

*Henderson* and *Porter*, for plaintiffs in error.

I. The court erred in sustaining the demurrer. The abandonment of the administration and the agreement of the parties constitute a sufficient waiver of mere form of election. Until the widow receives notice as provided by the act of 1847, her right of election remains. In the absence of the grant of letters of administration, there is no necessity for filing with the court a written election. Until administration, the right of the widow to elect is not lost by the lapse of any length of time. Parties may settle their rights by agreement. The formal election may be waived by the parties interested. The letters in this case were never approved. The agreement set forth in the petition is sufficient to bind the heirs to a compliance with its provisions. It was made on a good and a valuable consideration. The facts stated in the petition are sufficient to require a reformation of the instrument and a decree of title. A court of equity having jurisdiction of the cause will proceed to make partition and settle the respective rights of the parties. The statute concerning partition does not divest courts of equity of their jurisdiction in partition proceedings. (18 Mo. 468; 1 Sto. 654; 3 Paige, 546; 3 Bibb, 306; 6 Dana, 276; 8 Price, 518.) The plaintiffs are entitled to amend if necessary.

*Broadhead*, for defendants in error.

I. An election was necessary to vest in the widow the right to one-half the land. (Hamilton v. O'Neal, 7 Mo. 11.) The statute is explicit. This election can be made only in the mode pointed out by the statute, and within the time prescribed. The widow made no election either in the manner prescribed in the statute or in any other manner. The instrument in writing set out in the petition does not embrace the land at all, but only personal property. The widow could not ask a court of equity to relieve her from the consequences of her own neglect in failing to comply with those terms. The election is not to be viewed as a contract, nor ought it to be governed by any of the rules which apply to contracts between individuals. The widow having made no

election, the agreement could not operate to vest in her the legal title to any portion of the land claimed. The real estate is not embraced in the agreement. The court is not asked to reform the agreement. In proceedings at law for partition, the plaintiff must show a legal title. (McCabe v. Hunter, 7 Mo. 355.) Even if a court of equity can entertain a bill for partition of titles merely equitable, the court must first perfect them into legal titles. This is not asked in the petition. There is no equity in the *petition*.

Scott, Judge, delivered the opinion of the court.

This case stands on a demurrer to the amended petition. The ancestor from whom the lands descended died in 1852; consequently the act in the code of 1845 will determine the widow's right to dower in her husband's real estate. By the first section of that act, the widow, as a matter of right, at the death of her husband, was entitled to be endowed of the third part of all the lands whereof her husband, or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to hold and enjoy during her natural life. When the husband died without any child or other descendants in being capable of inheriting, the widow had her election to take her dower as provided in the first section discharged of debts, or to take all the real and personal estate, which came to the husband in right of the marriage, remaining undisposed of, absolutely, and one-half the real and personal estate belonging to the husband at the time of his death absolutely. The provisions of the dower act contained in the code of 1835 correspond, in relation to the matter under consideration, with *those contained* in the code of 1845. In the case of Hamilton v. O'Neil, 9 Mo. 10, which arose under the act of 1835, it was held that the widow was entitled to dower under the first section of that act, which is similar to the first section of the act of 1845, unless she made an election to take otherwise as prescribed by law. It is obvious that when a right grows out of an election, it can not arise or come into existence until

an election is actually made. (United States v. Grundy, 3 Cranch, 337.) The husband of the ancestor of the plaintiffs having died without children, and she having failed to make an election as to the dower she would take, there was no right or estate in her capable of descending on her heirs. The right of election being personal, it was not transmissible by descent; nor is it conceived that a failure to notify the widow of her right to make an election can confer on her heirs a right which they did not otherwise possess. It is unnecessary to determine the question, whether, if by any fraudulent contrivance of those interested to prevent an election a widow fails to make one, they will be permitted to reap the fruits of their misconduct. We conceive that an election can only be made in the manner prescribed by law. This rests on obvious principles. The matter of an election is purely a creature of positive law. Outside of the statute it has no existence. Hence if it is not clothed substantially with the requisites exacted by the statute, its existence can not be recognized. (Kemp v. Holland, 10 Mo. 259.)

But there is a feature in the petition of the plaintiffs which commends their cause to the more favorable attention of the court. That feature is, that their rights, although failing under the law of election, are supported by a valid contract. We can see no objection to this view of the case. Parties *sui juris* are as competent to contract in relation to dower as to any other subject. The widow could agree with the heirs capable of binding themselves as to the quantity of the estate she should take as doweress. If a mistake has occurred in committing the agreement to writing, there is nothing in the nature of the subject which exempts that agreement from reformation according to principles of equity more than any other agreement. If the alleged mistake is clearly and satisfactorily established, there is no reason why it should not be corrected as to all those who were capable of contracting and who are bound by the agreement. Married women and minors would not of course be bound.

Under our system of jurisprudence, there is nothing which

forbids a party having an equitable title from applying for partition in the forms adapted to such relief employed in courts of equity. It is well settled in the jurisprudence of America that a mistake in a written agreement is not only a defence in equity, but that a complainant may be entitled to the reformation of a contract and to the relief consequent upon such reformation; or, in other words, that a mistake in a written agreement is not only a defence to a petition, but it may be stated as a ground of equity, and affirmative relief be granted upon its being clearly and satisfactorily established. The circumstances of this case strongly corroborate the allegation of the bill as to the error committed in draughting the agreement set up as the foundation for the relief sought by this petition, and if they are not explained away or counteracted in proof, should entitle the plaintiffs to a judgment against the parties to it who were *sui juris*.

Judgment reversed and remanded; Judge Richardson concurs. Judge Napton concurs in reversing the judgment.

